■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANTHONY LEWIS, Respondent. [629 NYS2d 455] —Appeal by the People from an order of the County Court, Orange County (Byrne, J.), dated December 3, 1992, which granted that branch of the defendant's omnibus motion which was to suppress certain physical evidence.

Ordered that the order is affirmed.

The defendant, driving a vehicle belonging to his uncle, was stopped, *inter alia,* for exceeding the speed limit. Although he produced his license and proof of registration and insurance, the police, upon investigation, discovered that the defendant's license had been suspended. Accordingly, the vehicle was impounded. A subsequent search of a locked briefcase that had been lying on the back seat of the car, to which the police gained entry by breaking the lock, revealed, *inter alia,* an unlicensed handgun. The hearing court, holding that the defendant had standing to challenge the search, suppressed the handgun as the fruit of an improper inventory search. We now affirm.

An inventory search of a vehicle, although an exception to the warrant requirement, must be both reasonable and conducted pursuant to a " ' " 'single familiar standard' " ' " or established police agency procedure *(People v Galak,* 80 NY2d 715, 719, quoting *Colorado v Bertine,* 479 US 367; *Florida v Wells,* 495 US 1). The "single familiar standard" or established police procedure must meet two criteria of reasonableness: "First, the procedure must be rationally designed to meet the objectives that justify the search in the first place *(Florida v Wells, supra* [495 US 1], at 4). Second, the procedure must limit the discretion of the officer in the field" *(People v Galak, supra,* at 719). The establishment of such limits assures: "that the searches are carried out consistently and reasonably and do not become little more than an excuse for general rummaging

to discover incriminating evidence" *(People v Galak, supra,* at 719). In sum, the inventory search may not be used solely as a pretext for further investigation or conducted in bad faith. Here, although the search was said to be carried out pursuant to written State Police regulations, it was not a valid inventory search.

When the locked briefcase was first observed by the police, the defendant stated that it belonged to his uncle, he did not know what was in it, and he did not know the combination to the locks. Based on the facts before the police at that time, there was nothing suspicious about such an assertion, in that the defendant was driving a car he had borrowed from the uncle which contained the briefcase. Significantly, the police removed the locked briefcase from the impounded vehicle and took it with them in their cruiser as they returned to the barracks. They subsequently claimed that this was done as part of the inventory procedure. However, the police testimony concerning their actions casts serious doubt on this claim.

The officers' suspicions were apparently aroused and their interest in the briefcase changed when they telephoned the defendant's mother who, they claimed, said that she did not recognize the name given by the defendant as that of his uncle. This assertion was denied by the mother in her testimony at the hearing, and the uncle also appeared to testify that he had loaned the vehicle to the defendant. Notwithstanding this conflict, the police claimed that it was after their conversation with the mother that they decided to force open the locked briefcase. They justified their action by claiming it to be part of an inventory search. However, it is apparent that their testimony was tailored to fit the State Police's inventory search regulations. One officer testified that the briefcase was forced open to determine its rightful owner, while the other two officers testified that the forced opening was necessary to determine whether the case contained valuables. Based on this testimony, we affirm the County Court's finding that the police had abandoned their legitimate interest in conducting an inventory search and were merely impermissibly using the inventory regulations as a pretext for acquiring incriminating evidence against the defendant.

This finding is further supported by what we find to be a failure by the police to comply with the letter and spirit of the relevant police regulations. During the hearing, the following State Police regulation concerning inventory searches was introduced into evidence: "If a compartment or closed container which cannot be opened without causing physical damage to

the compartment or container appears likely to contain valuable property, perishable goods or property which may cause physical danger to police or other persons or damage to property, contact a member holding the rank of sergeant or higher [for permission to open the container]" (New York State Police Field Manual § 33Z2). Here, the police justified forcing open the briefcase on the ground that it might have contained something valuable. The police testimony supporting this decision cited two factors: first, that the briefcase contained something heavy, and second, that it was locked. However, we fail to see the connection between mere weight and value *(e.g.,* compare a brick and a precious metal), especially here, where the observation was otherwise unelaborated upon. In addition, allowing the fact that a container is locked to give rise to an inference that something valuable is contained therein is circular reasoning and would in essence vitiate any discretion under the regulation, in that there would never be a situation where a locked container could not be opened. Finally, here, the two factors together do not operate to strengthen one another. Thus, even in the aggregate, the factors cited by the police for forcing open the locked briefcase were inadequate to support a finding that it "appear[ed] likely" that the briefcase contained something valuable.

Finally, we hold that the defendant, as the driver of a vehicle borrowed with the owner's permission, had a privacy interest in the vehicle sufficient to support standing to challenge the search of the briefcase which was said to have come with the loan of the car *(see, People v Wright,* 140 AD2d 656; *see also, People v Gonzalez,* 68 NY2d 950; *People v Bell,* 121 AD2d 455; *People v Ball,* 121 AD2d 551; *Rakas v Illinois,* 439 US 128). We find the cases concerning standing cited by the dissent to be distinguishable. Here, not only was the defendant's interest in the briefcase, which he asserted belonged to a named relative, much less transitory or attenuated than the interest asserted in all but one of the cases cited by the dissent *(see, e.g., United States v McBean,* 861 F2d 1570 [luggage in trunk was "some friend's"]), but also, here, there was not an express disavowal of an interest in the item searched and consent to search *(see, e.g., United States v Monie,* 907 F2d 793 [defendant repeatedly disavowed any ownership of or interest in the items searched and did not object to the search]; *People v Alvaranga,* 198 AD2d 286, *affd* 84 NY2d 985 [same]). Thus, here, unlike in the cases cited, the defendant had a reasonable expectation that the privacy of the locked briefcase entrusted to him would be maintained *(see, People v Ponder,* 54 NY2d 160). And although, as noted by the dissent, the ultimate result

is that the defendant will escape punishment for a weapon he admittedly owned, the focus of our inquiry here must be the propriety of the police action based on the information before them. Ritter, J. P., Friedmann and Florio, JJ., concur.

Copertino, J., dissents and votes to reverse the order appealed from and deny the branch of the defendant's omnibus motion which was to suppress the handgun seized from the defendant with the following memorandum: The majority of this Court agrees with the County Court's conclusion that the defendant had standing to contest the search of the briefcase found on the floor of the back seat of the car which he was driving. Because the defendant repeatedly told the police that the briefcase belonged to someone else and that he did not know its contents, I dissent and vote to reverse the order of the County Court granting the branch of the defendant's omnibus motion which was to suppress the evidence found in the briefcase.

There is no dispute that the defendant was in lawful possession of his uncle's car at the time in question. State Troopers stopped the defendant on Route 17 in the Town of Goshen after they observed him traveling in excess of the posted speed limit and changing lanes without signaling. When the State Troopers learned that the defendant's driver's licenses had been suspended in both New York and New Jersey, they impounded the vehicle. During their inventory search of the vehicle, the State Troopers discovered a locked briefcase on the floor of the back seat. In response to questions from the State Troopers, the defendant repeatedly stated that the briefcase belonged to his uncle, and that the defendant did not know either the combination or the contents of the briefcase.

For reasons addressed by the majority and not relevant to this dissent, the State Troopers pried the briefcase open. Inside, the State Troopers found a semi-automatic handgun and ammunition. The defendant later admitted that he had bought the gun in New York City. Based on *People v Gonzalez* (68 NY2d 950), the County Court concluded that the defendant had standing to contest the search of the briefcase, and that the search was improper.

In order to challenge the seizure of evidence as improper, one must have standing, *i.e.,* one must have a "reasonable expectation of privacy" in the searched premises or item *(see, Rakas v Illinois,* 439 US 128, 152; *People v Ponder,* 54 NY2d 160).* A mere possessory interest in the item is insufficient to demonstrate a reasonable expectation of privacy *(see, People v Whitfield,* 81 NY2d 904, 906; *People v Ramirez-Portoreal,* 214 AD2d 830).

The requirement of standing is grounded on the concept that Fourth Amendment rights are personal in nature, and on the policy that invocation of the exclusionary rule should be limited to the persons whose rights have been infringed by the search and seizure *(see, People v Wesley,* 73 NY2d 351, 355). Although the defendant may rely on evidence elicited from the People's case, the burden of establishing standing is on the defendant *(see, People v Whitfield, supra; People v Wesley, supra,* at 357-358).

In *Gonzalez (supra),* the Court of Appeals held that the defendant, who was sitting in the front passenger seat of a car which he had borrowed from a friend, had standing to contest the search of a brown paper bag which had been resting on the seat between the defendant and the driver *(see, People v Gonzalez,* 115 AD2d 73, 75, *affd* 68 NY2d 950, 951, *supra).* This Court followed *Gonzalez* in *People v Wright* (140 AD2d 656), wherein we concluded that a defendant who had borrowed his aunt's car exercised such dominion and control over the car that he had standing to challenge the search of the automobile as well as a closed typewriter case lying on the front seat of the car.

The majority now relies upon *Gonzalez* and *Wright* to conclude that the defendant in this case had standing to contest the search of the briefcase. It has been held, however, that where the driver of a car told police that he was transporting the luggage for someone else, he did not have standing to contest the search of locked luggage found in the trunk in the car *(see, United States v Monie,* 907 F2d 793 [8th Cir] [where the defendant was driving a rented car]; *United States v McBean,* 861 F2d 1570 [11th Cir] [where the defendant was driving his own car]). It has also been held by this Court and others that a person carrying a bag which he or she claimed to be transporting for someone else did not have standing to contest the search of the bag *(see, People v Alvaranga,* 198 AD2d 286, *affd* 84 NY2d 985; *United States v Torres,* 949 F2d 606 [2d Cir]; *see also, United States v Rush,* 890 F2d 45 [7th Cir]).

The common thread running through the above-cited cases and the case now before us is that the defendant repeatedly told police that the briefcase did not belong to him. It is also relevant that the defendant in this case stated that he did not know the contents of the briefcase or the combination. Contrary to the reasoning of the majority, this should be viewed as an express disavowal of any interest in the briefcase or its contents, and there is no indication in the record that the briefcase was specifically entrusted to the defendant. I would therefore conclude that the defendant did not have standing to

challenge the search of the briefcase. Notably, the majority has concluded that the defendant in this case had a greater expectation of privacy in the locked briefcase which happened to be on the floor of the back seat of the car he had borrowed from his uncle than the defendant in *People v Alvaranga (supra)* had in the bag which he was carrying on his person in order to transport it as a service to its owner.

Moreover, the defendant's subsequent admission that the handgun was his should not give rise to an expectation of privacy. The defendant's repeated disclaimer of both ownership of the briefcase and knowledge of its contents prior to its invasion should be viewed as the equivalent of an abandonment of any interest in the briefcase or its contents *(see, People v Hughes,* 174 AD2d 692; *People v Hernandez,* 162 AD2d 417; *People v Patino,* 97 AD2d 552; *United States v Torres, supra,* 949 F2d 606). The defendant's actions were clearly an attempt to dissassociate himself from the contents of the briefcase *(see, People v Rose,* 149 AD2d 811, 812-813; *People v Wade,* 137 AD2d 638, 639; *see also, People v Boodle,* 47 NY2d 398, *cert denied* 444 US 969).

The impropriety of the police conduct notwithstanding, the defendant should not be allowed to assert the privacy rights of another to avoid standing trial for the illegal possession of a semi-automatic handgun. I therefore dissent and vote to reverse the order of the County Court granting the branch of the defendant's omnibus motion which was to suppress the handgun.